Harry Fredman, Appellant, v. Sutliff & Case Co., Inc., Appellee.

Gen. No. 10,092.

Opinion filed December 12, 1946. Released for publication December 30, 1946.

CASSIDY, SLOAN & CRUTCHER, of Peoria, for appellant.

BARTLEY, YOUNGE & BARTLEY, of Peoria, for appellee.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

This is an appeal from a summary judgment entered by the circuit court of Peoria county in favor of defendant, Sutliff & Case Co., Inc., a corporation, in a proceeding involving the right to possession and damages for the wrongful detention of certain premises owned by the plaintiff, Harry Fredman, and leased to the defendant corporation.

The undisputed facts appearing from the pleadings and affidavits filed in support thereof, disclose that plaintiff is the owner of a store building purchased by warranty deed from defendant in June 1943, and that the plaintiff leased said premises to the defendant for the term of one year, from Oct. 1, 1943, to Oct. 1, 1944. The said lease contained a typewritten clause which provided:

"Provided that party of second part to start Oct. 1, 1943, is renewable from year to year by party of second part by letter of intention to do so, sixty days before expiration of each year term. However, either party hereto can cancel this lease by giving the other notice in writing 60 days before expiration of each yearly term."

Defendant took possession of the premises under the lease and still retains possession, and has paid rent for the entire time.

On Oct. 30, 1945, defendant received a letter from the Fredman Bros. Furniture Co., stating in substance that the tenancy was on a month to month basis, and that possession of the premises was demanded by plaintiff on or before Jan. 1, 1946. The defendant however, retained possession and continued to pay the monthly rental which was received and held by plaintiff. Plaintiff herein, seeks possession of the premises and double damages for the wrongful withholding of the premises by the defendant, as well as an additional

$12,000 because plaintiff claims defendant knew that plaintiff had a renter for the premises who was willing to pay a substantially higher rental than defendant.

After the hearing on plaintiff's and defendant's motions for summary judgment, in which the foregoing facts were set forth by the respective affidavits of the parties, and prior to a decision by the court, plaintiff was permitted to file a supplemental affidavit. It was alleged therein that, in August 1945, when plaintiff failed to receive a notice of renewal from defendant, he assumed that defendant would vacate the premises at the end of the present yearly term. When defendant failed to do so, on Oct. 1, 1945, plaintiff contends that he thought there was a slight delay, and finally, when the check for the October rental, dated Oct. 6, 1945, came to his attention some 21 days after it was written, he thereupon, notified defendant to vacate the premises by Jan. 1, 1946.

Plaintiff, moreover, alleges therein, that the delay in the receipt of the check was occasioned by the fact that it was sent to his store at 614 S. Adams St., and that he was at 324 S. Adams St., and that he has never cashed that check, nor the ones sent for the November and December rental.

The circuit court denied plaintiff's motion for summary judgment, and granted defendant's motion therefor, and held that defendant was entitled to possession of the premises.

The sole issue presented upon this appeal is whether the defendant corporation held the premises as a tenant from year to year, in which case it would be entitled to the 60 day notice of termination provided in sec. 5 of the Landlord and Tenant Act [Ill. Rev. Stat. 1945, ch. 80, par. 5; Jones Ill. Stats. Ann. 72.05]; or whether defendant held the premises under the lease and was bound by the provision therein, to give notice of intention to renew the lease or otherwise forfeit rights to the premises.

■ The original lease under which defendant entered possession was for the term of one year, from Oct. 1, 1943, to Oct. 1, 1944. Unless this lease contained a legally operative provision for the renewal thereof, and was actually renewed by the parties, defendant's holding over and payment of rent after the expiration of the original term, with the knowledge and acquiescence of the plaintiff, would constitute a tenancy from year to year. (*Goldsborough v. Gable,* 140 Ill. 269, 273.)

■ It is necessary, therefore, to consider the provision of the original lease and determine the legal effect of the aforementioned typewritten clause. It is obvious that a court would reform the provision to the extent of substituting the word "lease" for the words "party of the second part," appearing in the first line, for the error is patent, and the intention of the parties is clear.

■ Even after such reformation, however, the provision is still legally inoperative, since the first clause thereof, is contradicted and rendered void by the second clause. The first clause provides that the lease is renewable by a "letter of intention to do so" submitted by defendant 60 days prior to the expiration of "each year term." The second clause provides that the lease can be cancelled by either party by giving the other notice in writing 60 days before the expiration of each yearly term.

■ The implication of the first clause is that the lease expires unless renewed 60 days before Oct. 1, and the implication of the second clause is that the lease continues in operation for the next yearly term unless either party gives notice to cancel 60 days before Oct. 1. There is no more reason to give effect to the first clause, as plaintiff argues, and hold defendant responsible to give notice of intention to renew the lease in August, than to give effect to the second clause whereby plaintiff was under the obligation to give

notice of cancellation of the lease in August. It is submitted, therefore, that this renewal clause was a legal nullity; and that the lease terminated by its own terms on Oct. 1, 1944; and that defendant held over under a tenancy from year to year created by law.

Notwithstanding this interpretation, however, even if the clause were construed as operative, and of legal effect, it is doubtful whether the conduct of the defendant and the plaintiff would have constituted a renewal of the lease for the year from Oct. 1, 1944, to Oct. 1, 1945.

Defendant gave no notice of renewal 60 days prior to the termination of the lease, and plaintiff gave no notice of cancellation. Defendant merely held over and paid rent, and plaintiff tacitly accepted such payment, and neither party had any discussion with reference to the renewal provision of the lease. Plaintiff contends, however, that this conduct constituted a renewal of the lease, and in support thereof, cites decisions from other jurisdictions, which are of interest but clearly not binding in matters of local interest, such as landlord and tenant, and one Illinois case, *Anderson v. Dodsworth,* 292 Ill. 335.

This case involved a provision in a lease for its extension for three different terms, and the issue was whether the tenant by holding over and paying rent extended the lease for the longer or the shorter terms. The court held that the tenant's holding over would be construed as an election to extend the term of the lease for the shortest period named.

That case is not a binding precedent upon the court in the instant case, inasmuch as it involved the issue of which of several terms the lease was extended by merely holding over, and not whether such conduct constituted a renewal of a lease. Furthermore, the courts of Illinois, along with those of other jurisdictions, make a distinction between provisions to extend

a lease and those for its renewal. In *Vincent v. Laurent*, 165 Ill. App. 397, the court stated at p. 403:

"Upon an examination of the cases cited by counsel we conclude the better doctrine to be, where the lessee has an option to *renew* a lease, that he should notify the lessor before the term expires whether he elects to renew as the lesser should know when the term expires whether he has or has not a tenant. Am. & Eng. Ency., Vol. 18, 692. In cases giving the lessee the privilege to extend the term as distinguished from a renewal, no notice of the lessee's election to extend is required in the absence of a stipulation therefor, merely remaining in possession being sufficient notice. (Ibid. 693.)"

Defendant cites cases from other jurisdictions where this distinction has been followed, but here again these decisions are not binding upon this court.

The more recent Illinois cases have not, however, discussed this distinction, nor has it been overruled. It is submitted that the distinction is tenuous, but even if it were completely rejected by this court, that would not change the result in this case. For even if defendant by holding over and paying rent, without expressly exercising his option to renew the lease, nevertheless, did renew the lease for the year beginning Oct. 1, 1944, to Oct. 1, 1945, this same conduct the following year beginning Oct. 1, 1945, would constitute a renewal for the yearly term from Oct. 1, 1945, to Oct. 1, 1946.

The allegations of plaintiff's supplemental affidavit which purports to establish that defendant's conduct did not constitute a renewal for the yearly term from Oct. 1, 1945, to Oct. 1, 1946, should properly be disregarded and stricken by the court.

Plaintiff alleges therein that when he received no notice from defendant in August 1945, (60 days before the end of the yearly term) he assumed that defend-

ant would move on Oct. 1, 1945; that when defendant did not move plaintiff assumed that there was some delay; and finally, when plaintiff received defendant's check dated October 6, some 21 days later, he realized defendant was holding over, and sent a letter rejecting defendant as a tenant. The excuse for the delay in the receipt being that it was sent to his store at 614 S. Adams St., and did not come to his attention at 324 S. Adams St., for 21 days.

In the first place, the fact that plaintiff did not receive defendant's notice of intention to renew the lease in August of 1945, would not constitute evidence of defendant's intention to terminate the lease in October, any more than did defendant's failure to give notice to renew the lease the preceding year. If, in August, plaintiff intended to cancel the lease, he was obliged under the terms and provisions of the lease— the same provision which required defendant to give notice to renew—to give defendant 60 days notice of cancellation. Plaintiff's conduct in maintaining a strict silence and waiting for the lease to expire is no more in accordance with the terms of the lease than defendant's in failing to give notice of intention to renew. In fact, in view of plaintiff's waiver of notice to renew, in Oct. 1944, the preceding year, at which time he regarded defendant's payment of rent and holding over as a renewal of the lease, plaintiff's conduct in 1945, in allowing the 60 days to go by without giving notice of termination of the lease, and, intending by his own allegations to terminate the lease, is tantamount to fraud.

Secondly, the allegation that the check, dated Oct. 6, did not come to plaintiff's attention until Oct. 27, since it was sent to one store while plaintiff was at another, is neither convincing as a true fact, nor does it operate to relieve plaintiff of the consequences of defendant's payment of the October rental. For, there is no allegation that the check was sent to a place different

from that to which all defendant's other checks were sent, hence, the delay, if true, is purely the result of plaintiff's neglect.

Finally, this affidavit, filed after the hearing on both plaintiff's and defendant's motions for summary judgment was in plain contravention to the terms of sec. 57 of the Illinois Civil Practice Act (ch. 110, par. 181, Ill. Rev. Stats. 1945 [Jones Ill. Stats. Ann. 104.057]) which provides:

"(1) Subject to rules, if, in any action . . . (c) to recover possession of land, with or without rent . . . the claimant shall file an affidavit . . . on the affiant's personal knowledge of the truth of the facts upon which the claim or counterclaim is based, . . . the court shall, upon motion, enter a judgment or decree for the relief demanded, unless the opposing party shall, by affidavit *filed prior to or at the time of the hearing on the motion* show that he has a sufficiently good defense on the merits to all or some part of the claim to entitle him to defend. . . ."

Therefore, since plaintiff's additional affidavit was in opposition to defendant's motion for summary judgment, and since it was filed neither prior to nor at the time of the hearing, as provided by the statute, it should be ignored by the court.

Actually it appears that plaintiff had no intention to terminate the lease until plaintiff secured a renter for the premises who would pay double the rent paid by defendant, and plaintiff thereupon sought to oust defendant by exercising its rights under the first clause of the typewritten provision for notice of renewal and termination of the lease.

From the facts and circumstances it is evident that defendant's conduct in Oct. 1945, was identical to that of 1944, and if the holding over and payment of rent constituted a renewal of the lease in 1944, as plaintiff contends, it constitutes a renewal thereof in 1945. Plaintiff has not cited a case where a lessor is per-

mitted to waive notice of renewal one year and then rely upon the notice requirement the next year in order to oust the tenant.

 It is our conclusion that the renewal provision contained two contradictory clauses and was therefore of no legal effect. When the lease expired by its own terms in Oct. 1944, and defendant held over and paid rent, defendant became a tenant from year to year for the period from Oct. 1, 1944, to Oct. 1, 1945. Inasmuch as defendant did not receive the statutory 60 day notice to quit, prior to the expiration of that yearly term, defendant became a tenant from year to year for another yearly term, beginning Oct. 1, 1945, to Oct. 1, 1946, and plaintiff's notice to quit, on October 30, 1945, was of no legal effect.

Even if the renewal provision be construed as legally operative, defendant's conduct in 1944, would not constitute a renewal of the lease, for he gave no notice of intention to renew and did no overt act as required by the Illinois cases to exercise his option to renew. If, however, this court were to overrule the distinction between provisions to extend a lease and to renew a lease, and construe defendant's conduct as an exercise of its intention to renew the lease in 1944, when it expired, then this same conduct in 1945 should properly constitute a renewal of the lease for that year. Plaintiff cannot rely on the doubtful allegations of an improperly filed affidavit to excuse himself from knowledge that defendant held over and paid rent in Oct. 1945, nor can plaintiff disregard the plain requirements of the typewritten provision—the same one that requires notice of intention to renew—to give notice of cancellation 60 days before the termination of each yearly term.

In the light of the foregoing conclusions, it is the judgment of this court that plaintiff is neither entitled to possession of the premises nor damages, and that

the circuit court did not err in granting defendant's motion for summary judgment. Judgment in favor of the defendant is affirmed.

*Affirmed.*